UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VELEBIT WB, LLC,** | : | CIVIL ACTION NO. 3:22-1328 |
| Plaintiff, | : | (JUDGE MANNION) |
| v. | : | |
| **HARVEST 3614, INC., RMLS HOP, LLC,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM

Pending before the court is Defendants Harvest 3614, Inc.'s ("Harvest"), and RMLS HOP, LLC's ("RMLS LLC"), motion to dismiss, (Doc. 27), Plaintiff Velebit WB, LLC's ("Velebit") amended complaint, (Doc. 26). Velebit brings suit seeking damages based on (1) tortious interference with contract, (2) tortious interference with prospective business relations, (3) anticipatory breach of contract, (4) declaratory judgment, (5) breach of contract (covenant of good faith and fair dealing), (6) breach of contract (failure to pay taxes and rent), and (7) guarantor liability. Defendants move to dismiss based on Velebit's failure to state a claim upon which relief can be granted. However, Velebit's claims are well-plead under the federal rules. Accordingly, the court will **DENY** the motion.

**I.     BACKGROUND**

The background of this case is taken from the factual allegations set forth in Velebit's amended complaint, (Doc. 26), which the court must accept as true for purposes of Defendants' motion to dismiss.

Plaintiff Velebit is the owner of the property located a 770 Kidder Street, Wilkes-Bare, PA (the "Property"). Defendant Harvest assumed the tenancy of the Property from RMLS HOP Restaurants PA, L.P. ("RMLS LP"). Defendant "RMLS LLC" signed as guarantor of the parties' lease (the "Lease") and agreed to continue as guarantor upon the assignment from RMLS LP to Harvest.

As a result of the COVID-19 pandemic, Velebit reduced Harvest's rent by 50% from May 1, 2020, through August 31, 2020. Harvest never signed a proposed Lease Amendment but did pay the reduced rate rather than the full rate. Velebit maintains that this reduction was a mere deferment but when it tried to collect the remaining 50% Harvest refused to pay. Eventually RMLS LLC paid Velebit the balance to avoid liability as Guarantor.

In June 2021, Harvest offered to purchase the Property for $1.1 million. Velebit rejected the offer because it considered that amount far less than the value of the property. Subsequently Harvest sought to negotiate a rent reduction but Velebit refused to agree to an amount different from that in the

Lease. On December 27, 2021, Harvest sent Velebit a document titled "NOTICE OF LEASE TERMINATION," which stated Harvest's intent to terminate the lease and vacate the property as of December 31, 2022.

In April 2022, after talks with several potential purchasers, Velebit executed a $2,600,000 Real Estate Purchase Agreement with a purchaser for the Property. Since the Lease contains a right to first refusal (§8.2), Velebit notified Harvest of the offer. Harvest refused the offer. However, Harvest also refused to sign an estoppel certificate, confirming *inter alia* its status as lessee of the Property, unless Velebit first acknowledged its termination of the lease. Velebit did not recognize Harvest's termination and Harvest did not sign the estoppel certificate. Without the signed estoppel certificate the purchaser cancelled its agreement to buy the property from Velebit citing a material change in the circumstances of the relationship between Velebit and Harvest.

Velebit alleges that the outstanding conflict with Harvest is a problem for all potential purchasers and that the market for the Property is now depressed because of Harvest's actions, which Velebit claims were purposefully harmful to it. Accordingly, Velebit initiated this action to resolve the dispute and recover damages for Harvest's allegedly intentional conduct from both Harvest and guarantor RMLS LLC.

Since the filing of this action, Harvest has refused to withdraw its Notice of Termination but also remained in possession of the Property past its claimed termination date of December 31, 2022. Still Velebit claims Harvest has failed to make all payments under the Lease including for the full amount of taxes and rent owed. As a result, Velebit amended its complaint to *inter alia* allege an independent breach of the lease by Harvest/RMLS LP and the Guaranty by RMLS LLC based on these payment defaults.

## II. LEGAL STANDARD

Defendants' motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the complaint fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all the facts alleged in the complaint as true, the non-moving party has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s]

- 4 -

to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the non-moving party's cause of action. *Id.* Furthermore, to satisfy federal pleading requirements, the non-moving party must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544 at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to

dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, the court should generally grant leave to amend a pleading before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d. Cir. 2004).

## III. DISCUSSION

Defendants Harvest and RMLS move to dismiss all seven of Plaintiff Velebit's claims: (1) tortious interference with contract, (2) tortious interference with prospective business relations, (3) anticipatory breach of contract, (4) declaratory judgment, (5) breach of contract (covenant of good faith and fair dealing), (6) breach of contract (failure to pay taxes and rent), and (7) guarantor liability. The motion to dismiss on each of these counts will be denied since Velebit sufficiently stated claims on which relief can be granted.

### A. Tortious Interference with Contract

In order to sufficiently plead tortious interference with contract, the moving party must show: (1) the existence of a contractual relationship between the complainant and a third party, (2) purposeful action on the part of the defendant intended to harm the relationship, (3) the absence of privilege or justification on the part of the defendant, and (4) actual damages resulting from the defendant's conduct. *Hillis Adjustment Agency, Inc. v. Graham Co.*, 911 A.2d 1008, ¶12 (Pa. Super. Ct. 2006). Here, the dispute is whether Velebit's pleading sufficiently satisfies the second element.

Velebit alleges that after it came to an agreement with a third-party purchaser of the Property for $2,600,000 in April 2022, Defendant Harvest indicated that it would not execute an estoppel certificate unless the Velebit acknowledged that the termination of the Lease and abandonment of the Property was valid as of December 31, 2022. (Doc. 26, ¶¶59, 62). Because of this material change in circumstance regarding the relationship of Velebit and Harvest, Velebit asserts that the third-party purchaser cancelled the transaction. *Id.* at ¶65. Velebit theorizes that this action was taken by Harvest to purposefully harm Velebit by damaging its deal with the third-party purchaser, as well as potential future deals. *Id.* at ¶¶64, 66-67. Velebit further alleges "two potential motivations for Harvest's conduct: to drive the price of

the Property down closer to its prior offer . . . or to create leverage to force Velebit to renegotiate the Lease terms for a lesser rent amount." (Doc. 31 at 14). Velebit's theory is sufficiently supported by the accompanying factual allegations in its amended complaint such that it is plausible. *See Bell Atlantic Corp.*, 550 U.S. 544, 570 (discussing plausibility requirement for a well-plead complaint).

Defendant argues that the refusal to sign the estoppel certificate could not have been purposeful action with intent to harm Velebit because Pennsylvania law "is clear that if a tenant executes an estoppel certificate and does not identify and outline any and all oral modifications to the subject lease, he is estopped from enforcing those said oral modifications in the lease." (Doc. 30 at 12). Thus, because executing the estoppel certificate would result in the Defendant waiving its legal rights, it could not have intended to cause harm as it was merely protecting its legal rights. *See id.* This may be a reasonable argument in defense of Velebit's claim, but it is a factual argument rather than a legal one challenging the sufficiency of Velebit's pleading. Defendant has not shown Velebit failed to adequately plead this claim at this stage; thus, Defendant's 12(b)(6) motion to dismiss count one (tortious interference with contract) will be denied.

### B.     Tortious Interference with Prospective Business Relations

The same elements as those of tortious interference with contract apply here, with the distinction that the first element is changed to the existence of a *prospective* contractual relation. *See Cloverleaf Development, Inc. v. Horizon Financial F.A.*, 500 A.2d 163, 167 (Pa. Super. Ct. 1985). Further, in order to show tortious interference with prospective business relations, a plaintiff must be able to show more than a "mere hope" of future business relations. *See Glenn v. Point Park College,* 272 A.2d 895, 899 (Pa. 1971). Indeed, there must be a "reasonable likelihood," or a probability, of future business relations with third parties. *See id.*

Here, the third and fourth elements are not at issue. Regarding the first element, the Velebit claims that Defendant Harvest's refusal to execute the estoppel certificate resulted in the subsequent material change in relationship between Velebit and Harvest, and that the cancellation of the deal between Velebit and the third party also impacted Velebit's future ability to sell the Property. (*See* Doc. 26 at ¶66). The outstanding conflict with Harvest depressed the value of the Property and extinguished the potential market of purchasers. *See id.* Furthermore, Velebit indicates that it received inquiries from "several" prospective purchasers prior to the deal with the third-party purchaser. *Id.* at ¶76. The allegation that Velebit had several

interested third-party potential purchasers before the deterioration of its relationship with Harvest sufficiently demonstrates more than a "mere hope" about the potential market of purchasers.

Regarding the second element, Defendant's motion to dismiss on this count offers the same argument as that for count one—*i.e.*, the Defendant offers a factual quibble with the allegations rather than a legal challenge sufficient to demonstrate a failure to state a claim by Velebit. Velebit's allegation regarding the motivation of Defendant Harvest in its decision to not execute the estoppel certificate meets the plausibility requirement to survive a motion to dismiss. Thus, the motion to dismiss this count will be denied.

### C.     Anticipatory Breach of Contract

Anticipatory breach of contract requires a "definite and unconditional repudiation of a contract by one party communicated to another." *Jonnet Development Corp. v. Dietrich Industries, Inc.*, 463 A.2d 1026, 1031 (Pa. Super. Ct. 1983) (citing *Wolgin v. Atlas United Financial Corp.*, 397 F.Supp. 1003, 1014 (E.D. Pa. 1975)). Further, "[a] statement by a party that [they] will not or cannot perform in accordance with the agreement creates such a breach." *Id.*

Here, Defendant Harvest's counsel sent a letter to Velebit's counsel titled, in part, "NOTICE OF LEASE TERMINATION," and stated "I would like to take this opportunity to advise that the Tenant, Harvest 3614, Inc., has elected to termination [sic] the Lease effective December 31, 2022 . . . . The Tenant shall vacate the Leased Premises on the Termination Date." (Doc. 26 at Exhibit A). Harvest argues that this was not an unequivocal refusal to perform the contract, but rather an "honest disagreement over the language of the lease and the status of the terms contained therein." (*See* Doc. 31 at 14) (citing *Andrews v. Cross Atlantic Capital Partners*, 158 A.3d 123 (Pa. Super. Ct. 2017)). While Harvest's argument may be of merit, it would need to be established by a trier of fact. Again, Harvest raises factual defenses better suited for a motion for summary judgment or trial rather than challenging the sufficiency of the amended complaint.

Velebit's amended complaint sufficiently alleges a definite and unconditional repudiation by Harvest. Thus, Defendants' motion to dismiss for failure to state a claim of anticipatory repudiation of contract will be denied.

D.   **Declaratory Judgment**

In addition to the aforementioned counts Velebit has pled in the alternative a claim seeking a declaratory judgment that the Lease and

Guaranty remain in full effect. Defendants rightfully acknowledge that the Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction, but the court still has jurisdiction over this claim because it is uncontested the parties otherwise meet the criteria for diversity jurisdiction.

Furthermore, Velebit's request for declaratory judgment is ripe. To determine if a declaratory judgment claim is ripe, a court considers: (1) the adversity of the interest between the parties to the action; (2) the conclusiveness of the declaratory judgment; and (3) the practical help, or utility of the declaratory judgment. *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491 (E.D. Pa. 2008). Here the parties disagree on a number of factual issues and are in turn adverse. A declaratory judgment would also conclusively clarify a key issue for prospective purchasers helping Velebit to sell the property. Thus, Velebit's claim for declaratory judgment is ripe and Defendants' motion to dismiss for failure to state a claim for declaratory judgment will be denied.

**E.   Breach of Contract (Covenant of Good Faith and Fair Dealing)**

A plaintiff must generally establish three elements to support a breach of contract claim: (1) "the existence of a contract, including its essential

terms"; (2) "a breach of a duty imposed by the contract"; and (3) "resultant damages." *See Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002) (citing *Corestates Bank v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Here Velebit has established the existence of a contract with Defendants and its essential terms including the covenant of good faith and fair dealing incorporated into all Pennsylvania contracts. (Doc. 26 ¶105). It has also pled a breach of that contract as well as damages in terms of the Property's decreased value from that breach. (Doc. 26 ¶110). As previously stated Velebit's allegation regarding the motivation of Harvest to breach meets the plausibility requirement to survive a motion to dismiss. Thus, Defendants' motion to dismiss for failure to state a breach of contract will be denied.

### F. Breach of Contract (Failure to Pay Taxes and Rent)

Velebit makes a second claim for breach of contract based on Defendants' failure to pay all taxes and rent on the property as required by the lease. (Doc. 26 at ¶¶114, 118). Defendants counter without citing any evidence that they have paid all taxes and rent to date. (Doc. 30 at 22) Likewise, Defendants construe the lease to only impose tax liability on them once taxes become delinquent. *Id*. Velebit does not construe the contract this way and asserts that this is a factual argument not appropriate for

consideration on a 12(b)(6) Motion. (Doc. 31 at 21). The court agrees. Construing the facts in Velebit's favor, as it is required to do so, the court finds Velebit has stated a plausible breach of contract claim with regards to unpaid taxes and rent. Thus, Defendants' motion to dismiss as to this count will be denied as well.

### G. Guarantor Liability

Under the terms of the contract, Defendant RMLS is Defendant Harvest's guarantor and, therefore, must indemnify and hold harmless Velebit from and against any and all damages, liability, loss, cost or expense which arises out of or results from Harvest's breach or default under the lease. (Doc. 1 at ¶¶121, 123). Because Velebit's preceding claims against Harvest are not denied, RMLS' liability is not extinguished. Thus, the motion to dismiss this claim will be denied.

## IV. CONCLUSION

In light of the foregoing, the court will **DENY** the Defendants' motion to dismiss, (Doc. 27). An appropriate order follows.

*s/ Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

**DATE: November 13, 2023**
22-1328-01